UNITED STATES BANKRUPTCY COURT
EASERN DISTRCIT OF LOUISIANA

IN RE:                                                                                          CASE NO. 14-11231

DEVIER DESIGN BUILD, LLC                                                    SECTION "B"

    DEBTOR                                                                                CHAPTER 11
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
DEVIER DESIGN BUILD, LLC
    PLAINTIFF

VERSUS                                                                                          ADV. P. NO. 15-1017

HASAN ALAWAMLEH
    DEFENDANT

## MEMORANDUM OPINION

This matter came before the court October 15, 2015 as a trial on an open account filed in state court and removed pursuant to 28 U.S.C. § 1334 by the plaintiff-debtor, Devier Design and Build LLC ("debtor"), to recover unpaid sums under two contracts with the defendant Hasan Alawemleh ("Alawamleh"). For the reasons set forth below, the court finds that the debtor completed the services called for under the contract, so payment for these services in the amount of $4,250.00 is due to the debtor. The court further finds that no attorney's fees are due.

**I.**    **Factual Background**

Alawamleh and the debtor entered into two contracts labeled "design service agreements" for the performance of preliminary design services on two separate projects: the design of a new convenience store at 455 Behrman Highway in Terrytown, Louisiana ("Behrman Project"), and the renovation of Alawamleh's existing convenience store located at 6200 West Bank Expressway in Marerro, Louisiana ("WBE Project").[1]

---

[1] Trial Exhibit 25.

Each contract required the debtor to provide the described preliminary design services in exchange for a $4,000 fee. Compensation under both contracts was structured in a $2,000 retainer fee due when the contracts were signed and returned to the debtor. Payment of the balance ($2,000) was due when the preliminary design drawings, written project scope, and written budget were completed. In retainer payments, Alawamleh paid $2,000 under the WBE Contract, and $1,750 under the Behrman Contract.[2]

The preliminary design services enumerated in the contracts include: preliminary drawings (site plan, floor plan and one exterior elevation); a meeting with the Jefferson Parish Building Inspector's Office to review drawings and receive feedback; a written preliminary project scope; and a written preliminary budget listing potential costs.

Thad Devier ("Devier") and Richard Albert, the debtor's formerly employed architect ("Albert"), testified at trial that all preliminary design services were performed and the drawings were submitted to and approved by the defendant. Alawamleh argues that he was never presented with the preliminary design documents necessary to satisfy the preliminary design requirements and that he never approved the drawings.[3] Alawamleh further argues that certain dates on the drawings show they were created after the debtor invoiced him for the work. This inconsistency, Alawamleh argues, shows that the preliminary design services were not finished when he was presented with the invoice. The parties do not contest this court's jurisdiction.

**II.     Legal Analysis**

The two preliminary design agreements between the debtor and Alawamleh create reciprocal rights and obligations between the parties in satisfaction of La. Civ. Code art. 1906

---

[2] Despite receiving less in retainer than what Alawamleh owed under the WBE Contract, the plaintiff commenced performance under the contract, and has made no objection.

[3] "Preliminary Design Documents" includes, for both the Behrman and WBE projects: all preliminary drawings in a completed form, written preliminary project scope of work and written preliminary budget.

2

and 1908. Obligations created by contract have the effect of law between the parties. The contracts are interpreted to resolve two particular issues: (1) to what extent may Alawamleh approve or reject the preliminary design drawings, and is his obligation to pay contingent on his approval; (2) what services does the contract obligate the debtor to provide.

A contract is an agreement between two or more parties whereby obligations are created, modified, or extinguished. La. Civ. Code art. 1906. Obligations created between the parties have the effect of law for the parties. La. Civ. Code art. 1983. A contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other. La. Civ. Code art. 1908.

The interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. The words used in the contract are to be given their generally prevailing meaning unless they are words of art or have acquired technical meaning. La. Civ. Code art. 2047. When the words of the contract are clear, explicit and lead to no absurd consequences, then no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046.

Whether Alawamleh gave written approval of the preliminary design documents is not relevant to this case because there is no writing requirement in the contract. The contract provides that the "Preliminary Design Drawings: . . . will be submitted to you [Alawamleh] for approval." The contract further provides that "Compensation: . . . ½ [is payable] upon *completion* of the Preliminary Design Drawings, Scope and Budget." (Ex. 25) (emphasis added). Given its generally prevailing meaning under La. Civ. Code art. 2047, the word "approval"

means to "give formal sanction to", and impliedly confers the right to reject the object of the approval.[4]

The "approval" right in the "Preliminary Design Services" is the only approval right attached to any of the three documents that the debtor is required to complete before earning its fee. More likely than not, the parties intended to allow Alawamleh to approve or reject the drawings until they reasonably reflected what he asked Albert to design.

Although the extent of Alawamleh's right to reject the preliminary design drawings is not specifically addressed in the contract, it is not without limit. The common intent of the parties is reflected in the "Compensation" provision of the contract, and grants the debtor the right to collect payment on "completion" of, among other documents, the preliminary design drawings. If the parties' intent was to subject the debtor's right to payment to Alawamleh's approval, the compensation provision should have contained such a provision.

The meaning of "preliminary design services" requires more explanation than the contract provides, and the debtor's obligations cannot be determined without more description. Given their prevailing meaning, the words of the contract are clear and unambiguous, but the terms "preliminary design drawings"[5] and "written scope and budget" have *technical meanings* within the use of the term under La. Civ. Code art. 2047. At trial, Richard Albert (who drafted the agreements) explained the terms' meanings in detail.

Albert explained that the scope of work and budget were created by the debtor's construction department using the completed preliminary drawings. The preliminary drawings were drafted, amended and redrafted to incorporate Alawamleh's continuous input, which was

---

[4] Bryan A. Garner, Black's Law dictionary, 111 (Thompson West, 8th ed. 1999).

[5] Preliminary drawings to include a (1) site plan, (2) floor plan and (3) one exterior elevation. (Ex. 25).

given during a series of meetings that took place at Alawamleh's office after the contracts were signed on August 11, 2011.[6] Albert testified that he recorded each modification Alawamleh suggested in red ink during their meetings, but the only drawings in evidence are the final preliminary drawings and not the progress (intermediate) drawings dated to each meeting.

The preliminary design drawings in evidence meet the criteria of the contracts for the Behrman Project and WBE Project. There are in evidence a site plan,[7] and a floor plan[8] for each project.

Albert testified that at the last meeting to review the preliminary drawings, Alawamleh approved the preliminary drawings and Albert sent them to the construction department where the budget, bid sheets and qualifications and exclusions were drafted. Next, Albert testified that he personally delivered the "packet"[9] to Alawamleh.

Alawamleh claimed that the meetings (including the planning and zoning meeting) never took place, or at least did not involve the drawings before him at trial. He subsequently admitted that he had reviewed drawings with Albert ("a couple of times") but maintained that he had never been presented with the full size drawings admitted into evidence.[10]

At trial, it was clear that Alawamleh misunderstood the plain meaning of the contract, even as he read it aloud to the court. He understood "Preliminary Design Drawings" to mean a

---

[6] Albert was unsure over what period of time the meetings took place, but estimated they took place sometime "in 2011 and 2012".

[7] Drawings A-1.0 and A-1.1 listed in Exhibit 1 (Behrman), and A-1.1 in Exhibit 17 (WBE).

[8] Drawings A-2.0, A-2.1 and A-2.2 listed in Exhibit 1, 6, 7 and 8 (Behrman), and A-2.1 in Exhibit 18 (WBE).

[9] The "packet", Albert explained, and Devier later reiterated, contained all the completed preliminary design documents, the Design Build Contract (Ex. 9), and the invoices (Ex. 24).

[10] Alawamleh claims that he was never shown the full size drawings, and that the drawings in evidence were not shown to him in any of the meetings with Albert.

set of drawings sufficient to obtain a permit, and when the debtor did not obtain permits for projects, he understood its performance under the contracts to be incomplete. This, among other examples of Alawamleh's misunderstanding of the contract's plain meaning, leads this court to believe that payment was withheld because Alawamleh misunderstood what the debtor's obligations were under the contracts.

Albert testified with specificity, describing different additions he made to the drawings at Alawamleh's request and on the advice of the planning and zoning office. Weighed against the hesitancy to answer directly and the sometimes inconsistency of Alawamleh's testimony, it is clear the meetings took place as Albert described.[11] Moreover, the size of the drawings that Alawamleh was presented with during the meetings did not limit him in directing Albert, in detail, to modify the drawings to reflect his vision for the project. Alawamleh testified after Albert, but whether Albert would have disagreed with Alawamleh or not, it is clear that the size of the drawings were large enough for Alawamleh to examine, reject and later approve them.

Alawamleh also testified that he never saw a proposed budget from the plaintiff. Albert testified to delivering budgets for each project along with the drawings, and included the budget for a garage addition to the Behrman Project that Albert drafted at Alawamleh's request.[12] Alawamleh denies ever asking for the additional drawing or seeing the budget for the garage. Alawamleh's testimony was evasive and nonresponsive to questions about the budgets. He eventually admitted that he rejected the final design build contract because the estimate was too

---

[11] Albert testified that he left Devier in spring 2012, but did subsequent design work for Alawamleh on an unrelated project. Albert further explained that Alawamleh, out of all of his clients, is the only client he requires to sign and date progress copies of the drawings throughout the drafting process. This began at Albert's demand after performance under the contracts at issue in this case.

[12] For Behrman project budgets see exhibits 2, 10 and 15. For WBE Project budgets see exhibits 28 and 29.

high.[13] Alawamleh could not have made this judgment without seeing the plaintiff's bid estimates.

Albert's testimony is the most credible of the three witnesses. Albert does not benefit from this litigation, and he personally performed the services in question. Albert credibly testified that all necessary services under the contract were performed and that he personally delivered the packet containing the preliminary design documents to Alawamleh.

Alawamleh contends that the preliminary design documents were dated inconsistently with the invoice and the work was not submitted to him. The debtor's recorded dates on all its documents are inconsistent with Devier's testimony that all work was done at least by May 30, 2012. For example: even if the packet was delivered on or about the invoice's print date in May 2012, Drawing A-2.1[14] is dated more than six-months later, and Drawing A-2.2,[15] is dated over eight-months before the contracts were even signed in August 2011. Other documents are incompletely dated,[16] or have no date at all.[17] The inconsistently dated records as a whole show that they are unreliable to establish the origination date of any of the documents.

Alawamleh's testimony did not directly rebut Albert's testimony that he delivered the packet containing all preliminary design documents to Alawamleh after he had approved the preliminary drawings. The contracts do not require the services to be rendered by any certain

---

[13]  This dovetails with the court's conclusion that Alawamleh confused the work necessary from Devier for the preliminary drawings with that required for final approval of the building contract.  Thad Devier testified that his fee for the preliminary drawings was $4,000 but that his fee for the final drawings to get the building permit would have been approximately $35,000.

[14]  Dated December 19, 2012. (Ex. 7).

[15]  Dated January 9, 2011. (Ex. 8). Drawing A-2.2 was dated some eight-months prior to the contracts' execution in August 2011.

[16]  See Exhibit 28, Estimate for WBE Project. The date reads "11-Feb." but leaves out the year.

[17]  See Exhibit 3, Estimate for Behrman Project. "Bid Date" is left blank.

date. The court finds that the debtor has carried its burden in showing it performed its obligations completely under the contracts.

### III.     Attorney's Fees

The debtor requests attorney's fees pursuant to Louisiana's Open Accounts Statute, La. Rev. Stat. § 9:2781. Although the petition filed in state court was styled a "Petition on an Open Account," the court finds that this is really a contract dispute, and as such the debtor is not entitled to attorney's fees under R.S. 9:2781. The contract itself contains no attorney's fee provisions, and in any event the court is not inclined to grant attorney's fees in this case. Thus, the request for attorney's fees is denied.

### IV.     Conclusion

For the above the reasons, this court finds that the debtor has performed services in satisfaction of its obligations under the contracts, and payment is due under the terms of the contract. Accordingly, Alawamleh is obligated to pay the balance of the $4,250 to the debtor. A separate judgment will be entered in accordance with this opinion.

New Orleans, Louisiana, April 14, 2016.

_____
Jerry A. Brown
U.S. Bankruptcy Judge